IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

WINFRED MAPLES                                                                          PLAINTIFF

v.                                          No. 3:06CV00175 JLH

AMERICAN GREETINGS CORPORATION                                                  DEFENDANT

## OPINION

Winfred Maples brought this action asserting claims of disability and age discrimination as well as hostile work environment against American Greetings Corp. pursuant to 42 U.S.C. § 2000e *et seq.* (Title VII of the Civil Rights Act of 1964). Maples has also brought a state-law tort claim of outrage. The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as to the claims that arise under federal law. The Court has authority under 28 U.S.C. § 1367 to exercise supplemental jurisdiction over the state-law claim. Before the Court is the defendant's motion for summary judgment. For the following reasons, that motion is granted.

### I.

A court should enter summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). When a nonmoving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The moving party bears the initial responsibility

of demonstrating the absence of a genuine issue of material fact. *Id*. at 323, 106 S. Ct. at 2553. If the moving party meets this burden, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (quoting FED. R. CIV. P. 56(e)). A genuine issue for trial exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. In deciding a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party and draws all inferences in his favor, mindful that summary judgment seldom should be granted in discrimination cases where claims are often based on inferences. *Peterson v. Scott County*, 406 F.3d 515, 520 (8th Cir. 2005); *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1099 (8th Cir. 2000) (collecting cases). *But see Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 762 (8th Cir. 2004) (Arnold, J., dissenting).

## II.

Maples began work at the American Greetings Corp. plant in Osceola, Arkansas, in 1981 and worked there continuously until June 21, 2005. In 1985, Maples lost a portion of his right index finger, middle finger, and ring finger while operating an envelope machine. In spite of his injury, Maples can tie his shoes, eat, brush his teeth, comb his hair, and drive an automobile all using his right hand. Additionally, Maples can pick up a pen with his right hand; perform minor home improvement tasks, such as painting a room and using a paint brush and paint roller, with his right hand; maintain his yard, including push mowing, weed eating, and picking up limbs; and bathe and groom himself without assistance. Maples even states that he can basically "do anything anybody else can do." The primary activity limited by Maples's right hand injury is his ability to lift very

large objects because it is difficult for him to maintain a grip.

During his tenure at American Greetings Corp., Maples worked on at least four different machines, including an envelope machine, a Bobst machine, sewing machine, and a cellophane wrapping machine. After his injury, Maples received several raises while operating those machines. Prior to June 21, 2005, Maples had operated the Bobst machine for a number of years. In January 2005, American Greetings Corp. switched to a new system of tracking quality and efficiency referred to as the Benchmark system. Pursuant to this system, employees were expected to meet certain quality and efficiency thresholds, including a ninety percent efficiency rating. According to American Greetings Corp., this system became necessary in order to prevent the closing of the company. American Greetings Corp. imposed the same Benchmark expectations on all other employees in Maples's area of the factory who were operating Bobst machines.

Pursuant to American Greetings Corp.'s disciplinary policy, a fifth warning to any employee for any reason would automatically result in discharge. In May of 2005, Maples received a final warning for failure to meet the required efficiency rating. In conjunction with this warning, American Greetings Corp. informed Maples that he would have thirty days to improve his Benchmark efficiency rating up to or above the required ninety percent. At the time, American Greetings Corp. had documented Maples's Benchmark score at around sixty-five percent. Maples was unable to meet the ninety percent efficiency threshold on his machine in the thirty days after receiving this notice, and American Greetings Corp. therefore terminated his employment on June 21, 2005.

Maples admits that he could do the jobs that American Greetings Corp. hired him to do from 1985 until October 2005 in spite of his right hand injury. Maples also admits that the employees on

3

second and third shift that operated the same Bobst machine as him were making ninety percent Benchmark or above as of June 21, 2005. In October of 2005, Maples told the Equal Employment Opportunity Commission that he was capable of performing his Bobst machine position without any accommodation at all. Since his injury, Maples has never heard any member of American Greetings Corp. management make a derogatory statement about his right hand impairment. Maples also acknowledges that American Greetings Corp. created a special toggle wrench for him to help him grip the wrench, which was necessary because his Bobst machine required the removal of dies with small screws. American Greetings Corp. did not allow other employees to use modified toggle wrenches.

While American Greetings Corp. contends that Maples never asked for any accommodation other than the special toggle wrench, Maples alleges that he asked to be put on a newer Bobst machine that would not break down as often. Maples claims that the Bobst machine that he worked on was outdated. Although the machine could function properly for the most part, it would break down more often than newer machines and, because of his injury, it took him longer to repair the machine than other employees who had the full use of both hands. Maples alleges that he requested to be placed on a newer Bobst machine, but that American Greetings Corp. denied this request.

Maples admits that he was never subjected to any comments regarding his age while he was an employee at American Greetings Corp. Maples also admits that he can point to no objective indications that age was a factor in his discharge and that his claim that his age played a role in his discharge is simply "a guess" on his part. Maples was fifty-three years of age when he was discharged on June 21, 2005. Maples acknowledges that American Greetings Corp. had many employees in June 2005 who were fifty-three years or older.

4

After American Greetings Corp. initially discharged Maples from his Bobst machine operator position on June 21, 2005, Frank Richardson, Maples's Human Resources Manager, offered to rehire Maples as a general factor worker. Richardson also offered to treat the situation as if Maples had simply voluntarily declassified to general factory, which allowed Maples to maintain his seniority and benefits. At the time, Maples thought this represented a fair opportunity. Maples began working in the general factory position on June 23, 2005, at a rate of somewhere in the range of $10.64 to $11.02 per hour. Shortly thereafter, Maples received a raise. Between June 23, 2005, and October 13, 2005, Maples received no written warnings regarding his job performance. On October 13, 2005, Maples voluntarily quit his general factory job because he was afraid that at some point he would receive further warnings for efficiency and also because he was not making enough money to pay his insurance premiums. Maples admits that no supervisor or any other employee of American Greetings Corp. indicated to Maples that he needed to quit his job in October 2005.

After leaving American Greetings Corp., Maples began working at Home Oil Co. at the rate of $7.25 per hour, working forty hours per week manually loading tires and garbage on a truck. Maples quit that position because he was afraid the excessive lifting would hurt his back and the inclement weather made him ill. Maples also drove a forklift and swept the floor at Home Oil Co. without any physical limitations. Maples has applied for a maintenance position with the Arkansas Highway Department, which calls for general labor and shoveling. Maples believes that he will be able to perform these job duties without physical limitation.

American Greetings Corp. had employment policies in place that would allow Maples to report any problems to company officials. Prior to his discharge in June 2005, Maples never made a complaint to any member of management alleging that he was being discriminated against on the

5

basis of his age or impairment. Maples does not know of any other employee that might have been subjected to the same type of discrimination he is alleging in this lawsuit.

## III.

In order to recover on a Title VII claim of employment discrimination, a plaintiff must first establish a prima facie case. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973). To establish a prima facie case of disability discrimination, a plaintiff "must show 1) he has a disability within the meaning of the [Americans with Disabilities Act ("ADA")], 2) he is qualified to perform the essential functions of his job, with or without reasonable accommodation, and 3) he suffered an adverse employment action because of his disability." *Philip v. Ford Motor Co.*, 328 F.3d 1020, 1023 (8th Cir. 2003) (citing *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1135 (8th Cir. 1999) (en banc)). "Summary judgment is proper if a plaintiff fails to establish any element of his prima facie case." *Epps v. City of Pine Lawn*, 353 F.3d 588, 592 (8th Cir. 2003) *(citing Nesser v. Trans World Airlines, Inc.*, 160 F.3d 442, 445 (8th Cir. 1998)).

American Greetings Corp. contends that Maples is not disabled as that term is defined by the law. Under the ADA, "disability" is defined in two parts: the plaintiff must have (1) "a physical or mental impairment" that (2) "substantially limits one or more of the major life activities" of the plaintiff.[1] 42 U.S.C. § 12102(2)(A) (2000). The Supreme Court has stated that these terms "need to be interpreted strictly to create a demanding standard for qualifying as disabled . . . ." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197, 122 S. Ct. 681, 691, 151 L. Ed. 2d 615 (2002).

---

[1]While a person can also meet the definition of "disability" under the ADA if he has a record of disability or is regarded by his employer as disabled, 42 U.S.C. § 12102(2)(B)-(C), neither of these alternative meanings are at issue in this case.

The burden of establishing a prima facie case and proving a disability rests with the plaintiff. *See Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1034 (8th Cir. 2005).

American Greetings Corp. does not dispute that Maples has an impairment of his right hand. It does contend that it "is insufficient for individuals attempting to prove disability status . . . to merely submit evidence of a medical diagnosis of an impairment. Instead, the ADA requires those 'claiming the Act's protection . . . to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience . . . is substantial.'" *Williams*, 534 U.S. at 198, 122 S. Ct. at 691-92 (quoting *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 567, 119 S. Ct. 2162, 2169, 144 L. Ed. 2d 518 (1999)). As mentioned, the impairment must substantially limit one of the major life activities, which include "'caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'" *Chalfant v. Titan Distribution, Inc.*, 475 F.3d 982, 989 (8th Cir. 2007) (quoting 29 C.F.R. § 1630.2(i) (2006)). The only activities that could be limited by a right hand injury are caring for oneself, performing manual tasks, and working.

Maples has not presented evidence sufficient to raise a genuine issue of material fact as to whether he is substantially limited in these major life activities. Maples has offered no evidence to show that his impairment "prevents or severely restricts" him "from doing activities that are of central importance to most people's daily lives." *Williams*, 534 U.S. at 198, 122 S. Ct. at 691; *see also Fenney v. Dakota, Minn. & E. R.R. Co.*, 327 F.3d 707, 715 (8th Cir. 2003). Maples can eat, brush his teeth, bathe and dress himself, drive, and take care of his home and yard without difficulty. Even if it takes Maples a little bit longer, as he alleges, his ability to perform these tasks is not substantially limited as required by the ADA. During his deposition, the following exchange took

7

place:

> Q: I am asking very generally are there some things that you just simply cannot do in your non-work related activities because of your right hand? Can you identify anything that comes to mind?
>
> A: . . . I can't identify a lot of stuff. I mean, I am not trying to be evasive, but it would be hard for me to identify some things. Most things I – you know, I am not helpless. I have got problems, but I am not helpless. I can do anything anybody else can do.

(Maples Dep. 70:9-19.) The only activity Maples's right hand impairment prevents him from doing is heavy lifting. Heavy lifting is not an activity that is of central importance to most people's daily lives. Maples has not demonstrated that his impairment substantially limits the major life activities of caring for oneself or performing manual tasks.

Maples counters that "[i]n this case the Plaintiff was placed in a position of having to perform certain tasks rapidly on a broken-down machine. His impairment to his right hand made this impossible." Maples further contends that had he been moved to a newer Bobst machine, he may have been able to adequately perform his job. At best, this constitutes an argument that Maples's impairment prevented him from working on a Bobst machine; this could also be interpreted as an argument that Maples's impairment only prevented him from working on one particular Bobst machine. Either way, "[i]nability to perform one particular job does not constitute a substantial limitation on working." *Philip*, 328 F.3d at 1024. It is apparent that Maples has worked several other jobs since his termination as a Bobst machine operator – as a general factory worker at American Greetings Corp., three different jobs at Home Oil Co., and possibly an additional job for the Arkansas Highway Department. Maples even told the EEOC that he was capable of performing his job as a Bobst machine operator without any accommodation. Maples has offered no evidence

that his right hand impairment prevented him from working in a broad class of jobs. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491, 119 S. Ct. 2139, 2151, 144 L. Ed. 2d 450 (1999).

Because Maples has not shown, as a matter of law, that he has a disability as defined by the ADA, summary judgment is granted on behalf of American Greetings Corp. on Maples's claim for disability discrimination.

## IV.

Maples also alleges that American Greetings Corp. violated the ADEA. An employer violates the ADEA if it terminates an employee who is at least forty years of age because of his age. *See* 29 U.S.C. §§ 623(a)(1), 631(a) (2000). In a disparate treatment claim based, as here, on indirect evidence, the parties proceed under the traditional, burden-shifting framework set out in *McDonnell Douglas*. *Evers v. Alliant Techsystems, Inc.*, 241 F.3d 948, 955 (8th Cir. 2001). Under this framework, a plaintiff must first make out a prima facie case of age discrimination. *Id.* If the plaintiff makes out a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the employer offers such a reason, the plaintiff must then present evidence sufficient to raise a question of material fact as to whether that reason was pretextual and to create a reasonable inference that age was a motivating factor in the adverse employment decision. *Id.* In order to establish a prima face case of age discrimination, Maples must set forth that: (1) he was over forty years old; (2) he was discharged; (3) he was meeting American Greetings Corp.'s reasonable expectations at the time of his discharge; and (4) he was replaced by someone substantially younger. *Haas v. Kelly Services, Inc.*, 409 F.3d 1030, 1035 (8th Cir. 2005) (citing *Mayer v. Nextel West Corp.*, 318 F.3d 803, 807 (8th Cir. 2003)).

American Greetings Corp. disputes only the third element, arguing that Maples failed to meet

9

American Greetings Corp.'s reasonable expectations at the time of his discharge. Assuming for the moment that Maples carried his burden on this element and therefore established a prima facie case, American Greetings Corp. has articulated a legitimate, nondiscriminatory reason for his initial discharge, and Maples has failed to present evidence from which a jury could reasonably infer that this reason was a pretext for discrimination. In January 2005, American Greetings Corp. implemented the Benchmark system to improve quality and efficiency, goals that Maples acknowledged are important. American Greetings Corp. imposed an efficiency rating of ninety percent on all employees, including all the employees operating a Bobst machine. The employees on second and third shift that operated the same machine as Maples achieved an efficiency rating at or above the required ninety percent. Maples failed to reach this threshold, and he was warned repeatedly about his failure to do so. American Greetings Corp. then terminated Maples's employment pursuant to its disciplinary policy, which states that if any employee incurs a fifth warning – which Maples had – that warning results in immediate termination.

In response, Maples has presented no evidence tending to show that the stated reason for termination was a pretext for age discrimination. To the contrary, Maples admitted in his deposition that he can point to no objective indication that age was a factor in his discharge; that he was never subjected to any comments regarding his age while he was an employee at American Greetings Corp.; that American Greetings Corp. employed many people in June 2005 who were fifty-three years of age or older; and that he has "just guessed in [his] mind that maybe [his] age [was] a factor" in American Greetings Corp.'s decision to terminate his employment. This is insufficient to raise a question of material fact as to whether American Greetings Corp.'s stated reason was pretextual or to create a reasonable inference that age was a motivating factor in the adverse employment

10

decision. Summary judgment is granted on behalf of American Greetings Corp. on Maples's claim for age discrimination.

## V.

Maples alleges a claim of hostile work environment and constructive discharge against American Greetings Corp.

> To prevail on a hostile work environment claim, the plaintiff must show: (1) that [he] was a member of a protected group, (2) the occurrence of unwelcome harassment, (3) a causal nexus between the harassment and [his] membership in the protected group, (4) that the harassment affected a term, condition, or privilege of employment, and (5) that the employer knew or should have known of the harassment and failed to take prompt and effective remedial action.

*Tatum v. Arkansas Dep't of Health*, 411 F.3d 955, 959 (8th Cir. 2005). The Supreme Court has made the "standards for judging hostility . . . sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275, 2283-84, 141 L. Ed. 2d 662 (1998). "[C]onduct must be extreme to amount to a change in the terms and conditions of the employment," and "complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing" are insufficient. *Id*. at 788, 118 S. Ct. at 2284. The Eighth Circuit has stated that "[h]ostile work environment harassment occurs when 'the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . .'" *Tademe v. Saint Cloud State Univ.*, 328 F.3d 982, 991 (8th Cir. 2003) (quoting *Bradley v. Widnall*, 232 F.3d 626, 631 (8th Cir. 2000)).

Here, not only was the workplace not permeated with discriminatory intimidation, ridicule, and insult, it appears that there was no harassment at all. Maples admits that during the twenty-plus years he worked at American Greetings Corp. after his injury, he never heard any member of

11

American Greetings Corp. management make a derogatory statement about his right hand. He also admits that he was never subjected to any comments regarding his age while he was an employee at American Greetings Corp. In his deposition, Maples gave two reasons why he left his general factory position in October 2005 – fear of failing to meet the Benchmark efficiency rating and inability to pay insurance premiums – neither of which were related to any sort of harassment on the part of American Greetings Corp. The only action taken by American Greetings Corp. mentioned by Maples in his response to the motion for summary judgment was his initial discharge, acknowledging that "there were no other overt acts of hostility or ridicule to which the Plaintiff was subjected . . . ." If this were enough to overcome a motion for summary judgment, then the door would be open to a claim of hostile work environment every time an employee received a demotion. Such a policy would fall outside "the substantive contours of the hostile environments forbidden by Title VII" as established by the Supreme Court. *See Faragher*, 524 U.S. at 788, 118 S. Ct. at 2284. Maples has failed to create a genuine issue of material fact as to whether he was ever subject to a hostile work environment, much less severe harassment, that would amount to a constructive discharge. Summary judgment is therefore granted in favor of American Greetings Corp. on Maples's claim for hostile work environment.

## VI.

Lastly, Maples alleges a claim of outrage against the American Greetings Corp. In Arkansas,

> There are four elements that are necessary to establish liability for the tort of outrage: (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was "extreme and outrageous," was "beyond all possible bounds of decency," and was "utterly intolerable in a civilized community;" (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it.

12

*Faulkner v. Arkansas Children's Hosp.*, 347 Ark. 941, 957, 69 S.W.3d 393, 403-04 (2002) (citing *Crockett v. Essex*, 341 Ark. 558, 19 S.W.3d 585 (2000); *Deitsch v. Tillery*, 309 Ark. 401, 833 S.W.2d 760 (1992)). Although Arkansas "has recognized a cause of action for the tort of outrage in an employment setting," for the most part Arkansas "has taken a very narrow view of claims of outrage." *Id.* at 957, 69 S.W.3d at 404. Arkansas also "requires clear-cut proof to establish the elements in outrage cases." *Allen v. Allison*, 356 Ark. 403, 416, 155 S.W.3d 682, 692 (2004).

As mentioned, in a motion for summary judgment, if the moving party carries its burden, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" Here, Maples has offered no evidence showing that there is a genuine issue for trial on his claim of outrage, but rather only bald assertions. In his response to the defendant's motion for summary judgment, Maples mentions a desire on the part of American Greetings Corp. for Maples to fail to reach the Benchmark efficiency standard, but he offers no corresponding evidence of intent. Maples claims that to keep him on an outdated machine is outrageous, but American Greetings Corp.'s conduct must have been "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Jones v. Clinton*, 990 F. Supp. 657, 677 (E.D. Ark. 1998) (quoting *M.B.M. Co. v. Counce*, 268 Ark. 269, 280, 596 S.W.2d 681, 687 (1980)). Requiring Maples to continue to operate a machine that he had operated for a number of years is not so extreme in degree as to go beyond all possible bounds of decency, "and merely describing conduct as outrageous does not make it so." *Id.*

Additionally, the Court has been presented with no evidence that American Greetings Corp.'s actions caused Maples's distress or that any such alleged distress is so severe that no reasonable

person could be expected to endure it. In fact, there is no evidence before the Court to indicate that Maples has suffered any emotional distress at all. There is no genuine issue for trial, and summary judgment on Maples's claim of outrage is granted.

## CONCLUSION

Maples has failed to create a genuine issue of material fact on his claims of disability discrimination, age discrimination, hostile work environment, and outrage, and summary judgment is therefore granted in favor of American Greetings Corp. on all claims. Document #23.

IT IS SO ORDERED this 10th day of April, 2007.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE